# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

ABRAHAM GLASPER,

          Petitioner,

   v.

KATHLEEN ALLISON, Warden,

          Respondent.

1:10-CV-00516 LJO GSA HC

FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## RELEVANT HISTORY[1]

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation (CDCR) following his conviction in San Mateo County Superior Court in 1988 of second degree murder. Petitioner is serving an indeterminate sentence of fifteen years to life with the possibility of parole.

Petitioner does not challenge his underlying conviction; rather, he challenges a May 5, 2009, decision of the Board of Parole Hearings (Board) denying parole. Petitioner claims the

---

[1] This information is taken from the state court documents attached to Respondent's answer and are not subject to dispute.

1

Board violated his due process rights by finding him unsuitable for parole when the Board failed to articulate a nexus between the factors used to deny parole and current dangerousness. He also complains that the Board continues to rely on unchanging factors in violation of his due process rights.

Petitioner filed a habeas court petition challenging the Board's 2009 decision in the San Mateo County Superior Court on August 5, 2009. The petition was denied in a reasoned decision on September 15, 2009. Petitioner then filed a state habeas petition in the California Court of Appeal, First Appellate District, on October 1, 2009. The petition was summarily denied on October 8, 2009. He next filed a petition for review in the California Supreme Court on October 16, 2009. The petition was summarily denied on December 23, 2009.

Petitioner filed the instant federal petition for writ of habeas corpus on February 10, 2010. Respondent filed an answer to the petition on June 21, 2010. Petitioner filed a traverse on September 7, 2010.

**STATEMENT OF FACTS**[2]

Eighteen-month-old Sharisa D. was left in Petitioner's care for the day. At some point, the baby began crying and Petitioner attacked her. Petitioner admitted to hitting the baby at least ten times in the abdominal area, picking her up by the throat and choking her, and bending her legs back to her head "to torment her." When emergency personnel arrived, the baby was already dead. An autopsy examination revealed the baby had suffered from numerous blows and severe internal injuries. The injury to her neck/throat area was so great that it appeared she had been battered with a blunt object. The injuries she sustained were equivalent to what would have been caused by a fall from a three-story building. The final cause of death was abdominal hemorrhage.

**DISCUSSION**

I.  Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

---

[2] This information is taken from the Board's decision and documentation attached to Petitioner's state habeas petitions.

of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging his underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at

3

1  409.    Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

II.    Review of Petition

There is no independent right to parole under the United States Constitution; rather, the right exists and is created by the substantive state law which defines the parole scheme. Hayward v. Marshall, 603 F.3d 546, 559, 561 (9th Cir. 2010) (en banc) (citing Bd. of Pardons v. Allen, 482 U.S. 369, 371 (1987); Pearson v. Muntz, No. 08-55728, 2010 WL 2108964, * 2 (9th Cir. May 24, 2010) (citing Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005)); Cooke v. Solis, No. 06-15444, 2010 WL 2330283, *6 (9th Cir. June 4, 2010). "[D]espite the necessarily subjective and predictive nature of the parole-release decision, state statutes may create liberty interests in parole release that are entitled to protection under the Due Process Clause." Bd. of Pardons v. Allen, 482 U.S. at 371.

In California, the Board of Parole Hearings' determination of whether an inmate is suitable for parole is controlled by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

Cal. Code Regs. tit. 15, §§ 2402(a) and (b).  Section 2402(c) sets forth circumstances tending to

demonstrate unsuitability for release. "Circumstances tending to indicate unsuitability include:

 (1) Commitment Offense.  The prisoner committed the offense in an especially heinous, atrocious or cruel manner.  The factors to be considered include:

  (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
  (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
  (C) The victim was abused, defiled or mutilated during or after the offense.
  (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
  (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

 (2) Previous Record of Violence.  The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.

 (3) Unstable Social History.  The prisoner has a history of unstable or tumultuous relationships with others.'

 (4) Sadistic Sexual Offenses.  The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

 (5) Psychological Factors.  The prisoner has a lengthy history of severe mental problems related to the offense.

 (6) Institutional Behavior.  The prisoner has engaged in serious misconduct in prison or jail.

Cal. Code Regs. tit. 15, § 2402(c)(1)(A)-(E),(2)-(9).

 Section 2402(d) sets forth the circumstances tending to show suitability which include:

 (1) No Juvenile Record.  The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

 (2) Stable Social History.  The prisoner has experienced reasonably stable relationships with others.

 (3) Signs of Remorse.  The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

 (4) Motivation for Crime.  The prisoner committed his crime as a result of significant stress in his life, especially if the stress has built over a long period of time.

 (5) Battered Woman Syndrome.  At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

 (6) Lack of Criminal History.  The prisoner lacks any significant history of violent crime.

5

    (7) Age.  The prisoner's present age reduces the probability of recidivism.

    (8) Understanding and Plans for Future.  The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

    (9) Institutional Behavior.  Institutional activities indicate an enhanced ability to function within the law upon release.

Cal. Code Regs. tit. 15, § 2402(d)(1)-(9)

    The California parole scheme entitles the prisoner to a parole hearing and various procedural guarantees and rights before, at, and after the hearing. Cal. Penal Code § 3041.5.  If denied parole, the prisoner is entitled to subsequent hearings at intervals set by statute. <u>Id</u>.  In addition, if the Board or Governor find the prisoner unsuitable for release, the prisoner is entitled to a written explanation. Cal. Penal Code §§ 3041.2, 3041.5.  The denial of parole must also be supported by "some evidence," but review of the Board's or Governor's decision is extremely deferential. <u>In re Rosenkrantz</u>, 29 Cal.4th 616, 128 Cal.Rptr.3d 104, 59 P.3d 174, 210 (2002).

    Because California's statutory parole scheme guarantees that prisoners will not be denied parole absent some evidence of present dangerousness, the Ninth Circuit Court of Appeals recently held California law creates a liberty interest in parole that may be enforced under the Due Process Clause.  <u>Hayward v. Marshall</u>, 602 F.3d at 561-563; <u>Pearson v. Muntz</u>, 606 F.3d 606, 608-609 (9th Cir. 2010).  Therefore, under 28 U.S.C. § 2254, this Court's ultimate determination is whether the state court's application of the some evidence rule was unreasonable or was based on an unreasonable determination of the facts in light of the evidence.  <u>Hayward v. Marshall</u>. 603 F.3d at 563; <u>Pearson v. Muntz</u>, 606 F.3d at 608.

    The applicable California standard "is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." <u>In re Lawrence</u>, 44 Cal.4th 1181, 1212 (2008) (emphasis in original and citations omitted).  As to the circumstances of the commitment offense, the <u>Lawrence</u> Court concluded that

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor

and mental state, indicates that the implications regarding the prisoner's
dangerousness that derive from his or her commission of the commitment offense
remain probative to the statutory determination of a continuing threat to public
safety.

Id. at 1214.

In addition, "the circumstances of the commitment offense (or any of the other factors related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to the determination that a prison remains a danger to the public.  It is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public." In re Lawrence, 44 Cal.4th at 1212.

"In sum, a reviewing court must consider 'whether the identified facts are *probative* to the central issue of *current* dangerousness when considered in light of the full record before the Board or the Governor.'" Cooke v. Solis, 606 F.3d 1206, 1214 (9th Cir. 2010) (emphasis in original) (citing Hayward v. Marshall, 603 F.3d at 560).

      A.      <u>Last Reasoned State Court Decision</u>

In the last reasoned decision, the San Mateo County Superior Court rejected Petitioner's claims as follows:

> Under the "some evidence" standard of review, it is not the reviewing court's role to reweigh the evidence.  As long as the Board cited permissible factors in support of its decision, the decision has some basis in fact, and the Board has articulated a nexus between those factors and petitioner's current dangerousness, the reviewing court may affirm the Board's decision. [Citations.]
>
> Here, the Parole Board cited several factors in support of its decision denying parole: (1) the extremely heinous nature of the commitment offense demonstrating an exceptionally callous disregard for human suffering involving injuries inflicted on an 18-month-old baby over time that were done with an intent "to torment her," that were acts characterized by the Board as "real evil"; (2) a history of assaultive behavior as a juvenile; (3) an unstable social history involving substance abuse; (4) a psychological assessment indicating a "low to moderate" risk of future violence, which concerned the Board because extreme violence was involved in the commitment offense; (5) opposition to parole expressed by the District Attorney and the victim's mother; and, most importantly, (6) numerous 115's beginning in 1989, followed by an eight-year gap with no discipline, followed by a new 128 in 2006 (for concealed tobacco) and a new 115 in 2007 (for masturbating during visiting) with no explanation for the new offenses, which the Board interpreted as a lack of impulse control, obviously posing a danger if the Petitioner were released.
>
> Because the Board articulated numerous factors in support of its decision and

articulated a nexus between many of those factors and the Petitioner's current dangerousness, there is "some evidence" in support of the Board's decision. That decision will not be disturbed by this Court.

(See Resp't's Ex. 2.)

### B. 2009 Board Hearing

The Board determined Petitioner was unsuitable for parole based on the circumstances of the commitment offense, prior violent history, unstable social history, negative psychological evaluation, and negative institutional behavior.

The Board determined that the commitment offense was especially heinous, atrocious and cruel. Cal. Code Regs., tit. 15, § 2402(c)(1). In this case, it is clear the commitment offense fits this characterization. Petitioner attacked and brutally killed a defenseless eighteen month old baby. He admitted to torturing her for the purpose of "tormenting her." The autopsy revealed incredible internal injuries. As discussed by the Board, Petitioner's actions are the very definition of evil. There is no question the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering. The state court reasonably determined that some evidence supported the Board's finding that the commitment offense was especially heinous, atrocious, or cruel.

The Board also found that Petitioner had a previous record of violence pursuant to Cal. Code Regs., tit. 15, § 2402(c)(2) and an unstable social history pursuant to Cal. Code Regs., tit. 15, § 2402(c)(3). In support, the Board noted that Petitioner received one year of probation for an assault he committed at the age of 14 in which Petitioner struck another youth with a stick. In addition, the Board noted that Petitioner had an extensive history of drug abuse. The state court's finding that some evidence supported these factors was not unreasonable.

The Board also considered the most recent psychological evaluation. The reviewing psychologist concluded that Petitioner posed a "low to moderate" risk of future violence should he be released. The Board was particularly concerned with this conclusion since the commitment offense involved extreme violence. This is some evidence to support the Board's finding that Petitioner poses a risk of danger.

Finally, the Board noted that Petitioner had an extensive history of negative behavior in prison. Cal. Code Regs., tit. 15, § 2402(c)(6). From 1989 to 1998, Petitioner suffered numerous CDC-115 serious rules violations. More recently, Petitioner suffered a CDC-128 counseling chrono in 2006 for possessing tobacco and a CDC-115 serious rules violation in 2007 for sexual misconduct. These incidents demonstrate continuing negative behavior, a lack of impulse control, and constitute some evidence to support the Board's determination that Petitioner continues to pose a risk of danger to the public if released.

The Board considered factors in support of suitability. Petitioner was commended for his extensive, continuous self-help programming and his work reports. He had excellent support in the community and good parole plans. Nevertheless, the Board concluded that the positive aspects of Petitioner's behavior did not outweigh the factors of unsuitability. In light of the heinous commitment offense, prior violent history, unstable social history, negative psychological evaluation, and continuing negative institutional behavior, the state courts' determination that there was some evidence to support the Board's 2009 decision was not an unreasonable application of California's some evidence standard, nor an unreasonable determination of the facts in light of the record. In addition, the Board did not rely on immutable circumstances alone. As discussed above, the Board relied on the negative psychological evaluation and Petitioner's continuing negative institutional behavior. Accordingly, federal habeas corpus relief is unavailable.

**RECOMMENDATION**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and
2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to

Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **October 4, 2010**                              **/s/ Gary S. Austin**
                                                                                    UNITED STATES MAGISTRATE JUDGE